ROGER GLADSTONE, DAVID NUSSBAUM AND JONATHAN KRANTZ, PLAINTIFFS–RESPONDENTS, v. HARVEY J. BERK, CAROLYN M. BERK, WIFE OF HARVEY BERK, AND IRVING BERK, DEFENDANTS–APPELLANTS, AND LEO JOSEPHS, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued January 24, 1989—Decided May 17, 1989.

Before Judges LONG, MUIR, Jr. and KEEFE.

*Stephen E. Samnick* argued the cause for appellants, Harvey J. Berk and Irving Berk.

*Irving Morris* argued the cause for appellant Carolyn M. Berk (*Greenberg, Margolis, Ziegler, Schwartz, Dratch, Fishman, Franzblau & Falkin,* attorneys; *Irving Morris,* on the brief).

*Nathan M. Edelstein* argued the cause for respondents (*Ridolfi, Friedman, Frank, Edelstein & Bernstein,* attorneys; *Nathan M. Edelstein,* on the brief).

The opinion of the court was delivered by

LONG, J.A.D.

These cases arise out of a relatively straightforward real estate deal pursuant to which plaintiffs Roger Gladstone, David Nussbaum and John Krantz agreed to buy an apartment complex in Lawrence Township owned by defendant Harvey Berk. The essential terms of the deal were negotiated and reduced to writing in a letter from Harvey[1] to his attorney. Briefly, Harvey agreed to sell the complex to plaintiffs for $7,470,000 subject to an adjustment in the price pending the outcome of a rent control suit. Harvey then received two higher offers for

---

[1]Because there are three defendants in this case with the surname of Berk, they will be referred to in this opinion by their first names.

the property and reneged on the deal with plaintiffs. Plaintiffs filed a complaint for specific performance and a notice of *lis pendens*. Count one of the complaint demanded that Harvey convey the property. Count two alleged that Harvey and his realtor, defendant Leo Josephs, acted in bad faith in soliciting new purchasers and were therefore liable to plaintiffs for compensatory and punitive damages.[2]

In a series of orders, the trial judge granted plaintiffs' motion for partial summary judgment for specific performance against Harvey and ordered Harvey to cooperate with plaintiffs by permitting them to inspect the books and records relating to the property and to assist plaintiffs in their attempt to convert the property to condominiums or a cooperative. He also prohibited Harvey from conveying an interest in the property to anyone else if such conveyance would adversely affect plaintiffs' contract rights.

Harvey waived his right to appeal the specific performance order and indicated a desire to sell to plaintiffs. Nevertheless, he refused to provide plaintiffs with the documentation and inspections necessary to complete the deal. During this period (late 1986), Harvey attempted to qualify for more favorable treatment under the pre–1987 Internal Revenue Code by arranging a transfer of the property to his father, defendant Irving Berk. A closing apparently took place on December 31, 1986, but after review by tax experts it was decided that the deal with Irving would not qualify for more favorable tax treatment. Accordingly, "the transactions were voided and all documents were returned."

In January 1987, plaintiffs moved for an order to compel Harvey to provide the information they needed. Harvey filed a cross-motion for an order allowing him to amend his answer to assert a counterclaim for damages based on plaintiffs' alleged

---

[2]The counts against Josephs were transferred to the law division and have been settled subject to the outcome of this appeal.

delay, and for an order setting March 4, 1987 as a firm closing date. In essence, Harvey took the position that plaintiffs had misrepresented that they had enough money to close. The trial judge ordered Harvey to make the requested documents available to plaintiffs, to allow plaintiffs access to the premises, to provide an accounting within an extended period and denied Harvey's cross-motion in its entirety.

Following a conference attended by counsel for the parties, the judge entered an order setting a firm closing date of August 3. On June 19, 1987, plaintiffs moved for an order compelling Harvey to provide the information necessary to complete the proposed deed and affidavit of title which had been forwarded to him.

Before that motion was heard, plaintiffs learned from Harvey's lawyer that Harvey was married, that his wife, Carolyn, refused to relinquish her dower rights in the property, and that Harvey had conveyed the property to Irving. Plaintiffs' counsel noted that a title search did not reveal any conveyance to Irving, but there was "substantial confusion" as to the exact status of title. With respect to the dower problem, plaintiffs sought to obtain clear title "by admeasuring [Carolyn's] dower interest and having payment therefor remitted out of the proceeds at closing." At argument on July 10, 1987, Harvey's lawyer maintained that Carolyn could not be divested of her right to dower. However, he assured the court that the transaction with Irving was done solely for tax purposes and that there was no problem with Irving conveying. The trial judge adjourned the scheduled closing, granted plaintiffs the right to amend their pleadings to assert claims against Irving and Carolyn, ordered Harvey to assist plaintiffs in ascertaining the whereabouts of Irving and Carolyn, and ordered Harvey to complete an affidavit of title.

On August 11, 1987 plaintiffs filed an amended complaint alleging that Carolyn had an inchoate dower interest in the property, seeking an order extinguishing Carolyn's dower

rights and substituting in lieu thereof a specific sum which would represent the value of those rights (count four). The complaint also named Irving Berk and sought an order declaring that he had no interest in the property (count five).

Carolyn filed an answer to the complaint alleging that she was not a party to the contract and that the court lacked authority to compel her to release her dower rights and accept money. Plaintiffs had difficulty effecting service on Irving. In September, 1987, they were advised by Harvey's lawyer that Irving lived at a particular address in Florida. Plaintiffs' counsel served the complaint at that Florida address by certified mail, return receipt requested, on September 8, 1987. The summons and complaint were returned unclaimed with a notation that a forwarding order had expired. On September 18, 1987, plaintiffs were advised that the Florida address was still good, but that Irving also resided in Brooklyn. On September 21, plaintiffs served Irving by sending the summons and amended complaint to him by certified mail at the Florida address and by regular mail at the Brooklyn address. The certified mailing to Florida was returned and no response was received from the pleadings served in Brooklyn. From the record, it appears that actual service on Irving was effected on September 21, 1987. Before Irving could answer, plaintiffs moved for summary judgment. At argument on October 16, 1987, counsel for Carolyn argued that Carolyn never signed the contract, did not consent to the conveyance of property, and objected to admeasurement of her dower rights. Counsel for Irving represented that he had spoken to Irving, that Irving had not been served, and would not consent to any order that said that he engaged in any wrongdoing.

The trial judge concluded that service on Irving was adequate and, that at any rate, his lawyer had represented that the purported transfer of the property to Irving was voided and the title remained with Harvey. With respect to Carolyn, the judge reasoned:

The facts are that the property was acquired by Harvey J. Berk for purposes other than his principal marital residence with Mrs. Berk. Since May 1, 1982, he had authority to alienate the property without her consent per *N.J.S.A.* 3B:28–3. By enacting this statute, the Legislature provided that although pre-existing dower survives, its holder cannot obstruct conveyances of property. Rather, the dower interest is to be admeasured and paid, but title will pass free and clear of that inchoate interest.

Harvey Berk's contract with plaintiffs implied marketable title was to be conveyed, and in order to do so, the court can (and hereby does) order the property sold free from dower pursuant to *N.J.S.A.* 3B:28–11. Mrs. Berk does not have a constitutional right to restrain the conveyance based on her inchoate right of dower. Rather the Legislature has changed her rights concerning property of this type. Of the alternatives permitted, partition and direct assignment are, for obvious reasons, inapplicable. The property will in all likelihood be sold by Mr. Berk to the plaintiffs. If it is, part of the consideration paid should go to Mrs. Berk, and the exact percentage of her interest can only be determined at a hearing similar to that provided for by *R.* 4:63–3 and *N.J.S.A.* 2A:56–25 and *N.J.S.A.* 2A:56–26.

The judgment, dated October 20, 1987, extinguished Carolyn's dower rights and any rights Irving may have had in the property, and directed Carolyn and Harvey to appear on October 28 "for a hearing in admeasuring the sum to be paid by defendant, Harvey Berk, to defendant, Carolyn M. Berk, for the aforementioned dower interest" in the property. Harvey was to pay that sum out of the money he received upon conveyance of the property to plaintiffs. Plaintiffs were entitled to take title free of all liens and encumbrances of Carolyn and Harvey and were to have no obligation to compensate Carolyn for her dower interest. Thereafter, the parties agreed to the dismissal of the admeasurement proceeding, apparently having settled on an agreeable sum in the event that the judge's order is sustained. Harvey, Carolyn and Irving appeal. We reverse.

■ Dower is a common law concept which has been recognized in our statutes since 1799. 7A *N.J. Practice (Clapp and Black, Wills and Administration )* (3 ed. 1984), § 1650 at 240. It permits a spouse to claim a life estate in one-half of all the real estate of which the other spouse was seized during coverture. *N.J.S.A.* 3B:28–1. Dower was created to provide protection to a widow upon the death of her husband. *Girard Acceptance Corp. v. Stoop,* 177 *N.J.Super.* 193, 198 (Ch.Div.

1980); 7A *N.J. Practice, supra*, § 1651 at 241. It has been called "a reasonable product of a society in which most wealth consisted of land, and in which it was desired to provide at least a modest social security for surviving widows." 2 *Powell, Real Property*, ¶ 209[1] at 140 (1988).

Because Harvey is still alive, this case involves dower inchoate, not dower consummate. *Id.* at 140–141. Inchoate dower has been defined as a "present fixed and vested valuable interest of a wife in her husband's estate of inheritance in land of which he is seized, subject to divestiture by the death of the wife in the lifetime of the husband." *Katz v. Farber*, 4 *N.J.* 333, 337 (1950); *See Fire Guard Sprinkler Corp. v. Manolio*, 171 *N.J.Super.* 333, 338 (App.Div.1979), aff'd o.b. 84 *N.J.* 485 (1980). It has been described as follows:

> The wife's interest before the death of her husband, called an "inchoate right of dower", is difficult to define except by stating its incidents. Though not an estate in land, it is a fixed and presently vested valuable interest in every estate of inheritance of which her husband is seized during their coverture and which was acquired by him prior to May 28, 1980; the interest is however defeasible in the event she predeceases him. Having once attached to land, it cannot be weakened or destroyed by legislative action. Thus the statute abolishing dower and curtesy has application only to real property acquired by a married person after May 28, 1980, the effective date of the statute. It is an encumbrance on the property, and hence its existence constitutes a breach of a covenant against encumbrances.
>
> The interest constitutes part of the separate property of the wife, and she may properly demand payment from her husband for its release and cannot be compelled to relinquish it except by her voluntary act. However, she cannot assign, sell or convey it away as a separate estate. Nor can it be taken on execution or applied to the satisfaction of her debts. [7A *N.J. Practice, supra*, § 1658 at 256–257; footnotes omitted].

The interrelationship of this unique interest in land and an action for specific performance has generated much legal precedent. In England, prior to the 19th century, a husband could be imprisoned until his wife agreed to join in a conveyance. Annotation, "Specific performance with abatement from purchase price of the value of the wife's dower interest," 46 *A.L.R.* 748 (1927), § 1 at 748. This rule was eventually abandoned because it was viewed as coercive to the wife, contrary to the

theory that she should not be forced to part with her dower rights except upon her own free and voluntary consent. *Ibid.*

In this country, three principal lines of authority developed. The first adopted the rule that a husband can be compelled to specifically perform with an abatement in the purchase price to account for the wife's dower interests. *See id.* § 2 at 749 (citing jurisdictions that have adopted this rule). This course was taken on the theory that a court of equity has the power to compel conveyance of whatever interest the seller has, with "a just abatement from the purchase money for the deficiency of title to, or quantity or quality of, the estate." *Id.* § 1 at 748. "The reason of this rule is that it is unjust to allow the vendor to take advantage of his own wrong, default, or misdescription." *Ibid.* A second line of cases allows the purchaser to retain one-third of the purchase price as an indemnity until the wife should die or convey. *See id.* § 4 at 764–767 (citing jurisdictions that have adopted this rule). Under a third approach, the purchaser is not entitled to any abatement of the price. *See id.* § 3 at 756–764; *accord* 71 *Am.Jur.*2d, *Specific Performance*, § 138–140 at 179–183; 11 *Williston, Contracts* (3 ed. Jaeger 1968), § 1436 at 901–902; 2 *Powell, supra,* ¶ 209[2] at 153–154.

New Jersey courts have consistently adopted the third of these alternatives and held that the purchaser can obtain specific performance of the husband's interest—but only by paying the full purchase price, without abatement or indemnity. *See* 7A *N.J. Practice, supra,* § 1668 at 272–273 (listing citations). The cases justify the rule on the belief that an abatement or indemnity would cause the husband to put pressure on his wife to join in the conveyance, thereby inducing her to release her dower against her will. *Bondarchuck v. Barber,* 135 *N.J.Eq.* 334, 336–337 (Ch.1944); *Stone v. Stanley,* 92 *N.J.Eq.* 310,

311–312 (Ch.1920).[3]

The problem with this remedy in this case is that it is of no assistance to the plaintiffs who will need clear title to the property in order to pursue their conversion plans. Those plans will not materialize so long as each individual cooperative or condominium sought to be sold is subject to the possibility that Carolyn's inchoate dower will become consummate. Thus, plaintiffs applied to the trial judge and obtained an order requiring Carolyn to accept money in lieu of dower. In so ruling, the judge determined that the 1982 revisions to our probate code (*N.J.S.A.* 3B:28–1 *et seq.*) altered pre-existing limitations on the alienability of property which is subject to dower.

*N.J.S.A.* 3B:28–1 provides that dower and curtesy in land acquired prior to May 28, 1980 is fully preserved:

> The widow or widower, whether alien or not, of a person dying intestate or otherwise, shall be endowed for the term of her or his natural life of the one full and equal half part of all real property of which the decedent, or another to the decedent's use, was seized of an estate of inheritance at any time during coverture prior to May 28, 1980, to which the widow or widower shall not have relinquished her right of dower or his right of curtesy by deed duly executed and acknowledged in the manner provided by law to record deeds.
>
> The widower's right of curtesy shall be enforced, admeasured and determined in the same manner and subject to the same limitations as is provided by law in the case of dower.

*N.J.S.A.* 3B:28–2 affirms the abolition of dower as to all other property: [4]

---

[3]The sole recognized exception to this rule is the situation in which a wife would have been willing to join in the deed had the husband not persuaded her to refuse. *See Young v. Paul,* 10 *N.J.Eq.* 401, 412–414 (E. & A. 1855) (ordering specific performance with indemnity when a husband dissuaded his spouse from conveying). This exception is based upon an application of equitable principles; the husband should not benefit from his own wrongdoing.

[4]By substituting the elective share statute (*N.J.S.A.* 3B:8–1), the Legislature insured that a surviving spouse would not be reduced to poverty if a decedent left no provision in his or her will: "If a married person dies domiciled in this State, on or after May 28, 1980, the surviving spouse has a right of election to

> All rights of dower and curtesy are abolished as to the real property of which a married person, or another to his or her use, shall, on or after May 28, 1980, become seized, during coverture, of an estate of inheritance.

*N.J.S.A.* 3B:28-3 prescribes:

> As to real property occupied jointly by a married person with his or her spouse acquired on or after May 28, 1980, as their principal matrimonial residence, every married person shall be entitled to joint possession thereof with his or her spouse during their marriage, which right of possession may not be released, extinguished or alienated without the consent of both spouses except by judgment of a court of competent jurisdiction. *All other real property owned by either spouse which is not the principal matrimonial residence may be alienated without the consent of both spouses.* [Emphasis supplied].

On this appeal Carolyn contends that her dower rights in the property are vested and are constitutionally protected against divestiture without her consent. She claims that in enacting the probate revision statutes the Legislature recognized and intended to preserve her vested right and that the trial judge misinterpreted the statutes and *R.* 4:63-3 as empowering him to substitute money for her inchoate interest in the property. According to Carolyn, the Legislature never intended to disturb the well-settled rule in New Jersey that where a wife does not join in the contract or deed with respect to property owned by a husband the purchaser can have specific performance only by paying the full purchase price to the husband, without abatement, yet subject to the wife's dower rights.

Harvey argues that that trial judge erred by giving *N.J.S.A.* 3B:28-3 retroactive effect. He reasons that all dower rights were intended to be preserved with respect to real property acquired by a spouse prior to May 28, 1980 and that the trial judge lacked the authority to substitute money in lieu of dower.

Plaintiffs counter that there is no reason not to apply *N.J.S. A.* 3B:28-3 to this 1986 transaction. They reason that this statute effectuated the public policy of this State to promote the free alienation and marketability of real property. Con-

---

take an elective share of one-third of the [decedent's] augmented estate," as that term is defined in the statute. *N.J.S.A.* 3B:8-1.

ceding that the Legislature preserved dower with respect to property acquired by a spouse prior to May 28, 1980, plaintiffs contend that it is not inconsistent with that preservation to substitute money in lieu of dower. That way, the preservation of dower under *N.J.S.A.* 3B:28–1 can be reconciled with the mandate of *N.J.S.A.* 3B:28–3 that all real property, other than the matrimonial residence, can be alienated without the consent of the non-owing spouse.

In interpreting these statutes, our duty is to reach a reasonable result consonant with the legislative intent. *Riccio v. New Jersey Mfrs. Ins. Co.* 179 *N.J.Super.* 65, 70 (App.Div.1981). We begin with the words and the structure of the statutes themselves. *N.J.S.A.* 3B:28–1 and 2 are forthright. The former unequivocally preserves dower as to property acquired before May 28, 1980 and the latter clearly abolishes dower as to property acquired after the 1980 date. The likely reason for this prospective abolition of dower is that the Legislature was aware that our courts had previously characterized inchoate dower as a vested interest in land which cannot be constitutionally abridged. *Gerhardt v. Sullivan,* 107 *N.J.Eq.* 374, 377–378 (Ch.1930); *accord Kicey v. Kicey,* 114 *N.J.Eq.* 116, 118 (E. & A.1933) (dictum). Thus, in order to protect against the possibility that the absolute abolition of dower would be found unconstitutional, the Legislature enacted a statute in which the abolition of dower was to operate prospectively only. *See Friedman v. C & S Car Service,* 211 *N.J.Super.* 657, 668 (App.Div.1986) (citing *Girard Acceptance Corp. v. Stoop, supra,* 177 *N.J.Super.* at 194 n. 1 (Ch.Div.1980)), rev'd on other grounds 108 *N.J.* 72 (1987).

*N.J.S.A.* 3B:28–3, which is at the heart of this dispute, must be read in tandem with *N.J.S.A.* 3B:28–2. This statute sets forth a principle of free alienability applicable to non-dower property only. Indeed, as originally enacted, *N.J.S.A.* 3B:28–2 and *N.J.S.A.* 3B:28–3 were part of a single statutory provision (*N.J.S.A.* 3A:35–5) which underscores that the alienability principle is limited to *N.J.S.A.* 3B:28–2 property. In suggesting

that the policy of free alienability somehow impacts on the question of how we address Carolyn's dower interest, plaintiffs have misconceived the point of the scheme: to preserve dower and curtesy as to all property acquired prior to May 28, 1980; to abolish dower and curtesy as to all property acquired after that date, and to allow all the property with respect to which dower and curtesy have been abolished to be freely alienated without the consent of both spouses, except for the matrimonial home acquired after May 28, 1980 which, for policy reasons will require the consent of both parties for alienation. *N.J.S.A.* 3B:28–1 *only* addresses property acquired prior to May 28, 1980 and *N.J.S.A.* 3B:28–2 *and N.J.S.A.* 3B:28–3 *only* address property acquired after May 28, 1980. Thus, the policy of free alienability has no relevance to property with respect to which dower has been preserved. As to that property all dower rights existing as of the time of the statutory revision remain intact.

Separate and apart from what we read as the literal sense of the statute, we think it would be perversion of our role as interpreters to construe a phrase in one section of an act to completely eviscerate another section of the same statute. This conflicts with the well-established canon of statutory interpretation which teaches us to harmonize or reconcile the elements of an enactment. *See Petition of Sheffield Farms Co.*, 22 *N.J.* 548, 554 (1956); *Bravand v. Neeld*, 35 *N.J.Super.* 42, 52–53 (App.Div.1955). Yet, this is exactly what plaintiffs argue for. By their interpretation, the Legislature's scrupulous preservation of dower as to property acquired prior to the effective date of the act (*N.J.S.A.* 3B:28–1) is rendered nugatory by the application to it of a phrase in *N.J.S.A.* 3B:28–3 favoring the free alienability of property. If the most important aspect of dower—its non-consensual inalienability—is eliminated, dower is, for all intents and purposes, eliminated as well. In effect, if we accept plaintiffs' view, we would have to conclude that the Legislature did indirectly what it refused to do directly—abolish dower outright. We do not think the Legislature intended this.

As has been said, an essential attribute of dower is that non-owning spouse cannot be compelled to surrender her right in the property.[5] That being the case, plaintiffs could only obtain specific performance from Harvey by paying the full purchase price without abatement or indemnity and subject to Carolyn's dower interest.

Plaintiffs claim that *R.* 4:63 and *N.J.S.A.* 3B:28-11 together constitute an independent basis for requiring admeasurement of Carolyn's dower interest. We disagree. The statute and court rule were not changed in response to the new probate code; they have been in existence in substantially the same form for many years. The rule clearly does not authorize admeasurement of dower—rather it sets forth procedures when some other authority permits admeasurement. Thus, *R.* 4:63-1 states:

> If in an action for partition or for the admeasurement of dower or curtesy, the court shall be satisfied that a division of the real estate can be made without great prejudice to the owners thereof, it may appoint one or more persons as commissioners to ascertain and report in writing the metes and bounds of each share; if not so satisfied, it may direct a sale or, in its discretion, if the action is one for dower or curtesy, an assignment from the rents and profits.

*N.J.S.A.* 3B:28-11 is likewise inapplicable. That statute merely incorporates a 19th century statutory scheme governing a situation in which a husband has died and his widow is seeking relief. *Revised Statutes of New Jersey, N.J.S.* 3:38-1 *et seq.* (1937). Clearly, *N.J.S.A.* 3B:28-11 was never intended to set forth a new procedure or to change existing law by allowing

---

[5] In *Katz v. Farber,* 4 *N.J.* 333 (1950), the wife actually sought money in lieu of dower, but the court held that she was not entitled to it. According to the court:

> In this State, in the absence of legislation and without the consent of the parties in interest, a widow has no right to elect, and the court is without power to allow, a lump sum in lieu of dower. The same principle applies to inchoate dower. [*Id.* at 338].

*Accord State, Com'r of Transportation v. Shuman,* 150 *N.J.Super.* 9, 13 (App.Div.1977). If a wife cannot obtain money in lieu of dower even if that is what she wants, it logically follows that she cannot be compelled to accept a lump sum, at least in the absence of legislation.

money in lieu of dower in actions for specific performance. Admeasuring consummate dower rights in partition actions has a long history. *See N.J.S.A.* 2A:56–1, –25, –26, –27. This is not such an action.

We conclude, therefore, that the judgment must be reversed insofar as it extinguishes Carolyn's dower rights in the property. The trial judge had no statutory authority to order Harvey and Carolyn to appear for a hearing to measure the sum that should be paid from Harvey to Carolyn in lieu of dower.

■ We turn now to Irving's appeal in which he contends that the portion of the judgment extinguishing any interest he might have in the property is invalid because he was never personally served and was not given enough time to answer. We address this issue notwithstanding Irving's questionable status as an aggrieved party (he maintains that he has no interest in the property), because we believe the entry of the judgment against him was procedurally defective. Plaintiffs purportedly served Irving under *R.* 4:4–4(e). Although they did not scrupulously adhere to the rule (they never served Irving by regular mail at his Florida address or by certified mail at his Brooklyn address), actual service was apparently effected on September 21, 1987. *See R.* 1:5–4(b). Under *R.* 4:6–1(a), Irving had thirty-five days to serve his answer. Thirty-five days from September 21, 1987 expired on October 26, 1987, six days after entry of judgment against Irving. Moreover, plaintiffs never asked for the entry of default, in accordance with *R.* 4:43–1, nor did they request the judge to enter a final judgment by default, in accordance with *R.* 4:43–2(b).

Irving was entitled to the full time afforded under *R.* 4:6–1(a) within which to answer and no judgment properly could have been entered against him until the time to answer expired. Even then the procedural safeguards surrounding the entry of default and default judgment should have been invoked prior to the entry of final judgment. We thus reverse the judgment entered against Irving and remand the case to the trial judge

for further proceedings upon the filing of Irving's answer. Depending on the answer, plaintiffs may make an appropriate motion for disposition.

Reversed in part; remanded in part.

