NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4136-13T4


NICHOLAS CALANDRILLO,

    Plaintiff-Appellant,

v.

GODADDY.COM, LLC,

    Defendant-Respondent,

_____

Submitted May 12, 2015 – Decided May 26, 2015

Before Judges Yannotti and Hoffman.

On appeal from Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2379-13.

Dubeck Law Firm, LLC, attorneys for appellant (Mark D. Miller, of counsel and on the brief).

Marshall Dennehey Warner Coleman & Goggin, attorneys for respondent (Walter F. Kawalec, III, on the brief).

PER CURIAM

    Plaintiff Nicholas Calandrillo appeals from an order entered by the Law Division on March 5, 2014, dismissing his complaint with prejudice. We affirm, but remand the matter to

the trial court for entry of an amended judgment dismissing the complaint without prejudice.

Plaintiff is the Chief Executive Officer of Metaphor, Inc. ("Metaphor"), a pharmaceutical advertising agency. Akrimax Pharmaceuticals ("Akrimax") is one of Metaphor's largest clients. Akrimax distributes certain pharmaceutical products, including Tirosint, which is used to treat hypothyroidism. Defendant GoDaddy.com, L.L.C. ("Go Daddy") is an internet domain registrar and web hosting company that, among other things, auctions off internet web addresses.

Plaintiff purchased the "tirosint.com" web address from Go Daddy in order to manage it for Akrimax. Plaintiff's purchase of the web address was made pursuant to Go Daddy's Universal Terms of Service Agreement (the "Agreement"), which includes, among other terms, the following:

> 21. GOVERNING LAW; JURISDICTION; VENUE; WAIVER OF TRIAL BY JURY
>
> Except for disputes governed by the Uniform Domain Name Resolution Policy . . . this Agreement shall be governed by and construed in accordance with the federal law of the United States and the state law of Arizona, whichever is applicable, without regard to conflict of laws principles. You agree that any action relating to or arising out of this Agreement shall be brought in the state or federal courts of Maricopa County, Arizona, and you hereby consent to (and waive all defenses of lack of personal jurisdiction and forum non conveniens with

respect to) jurisdiction and venue in the state and federal courts of Maricopa County, Arizona. You agree to waive the right to trial by jury in any action or proceeding that takes place relating to or arising out of this Agreement.

In his complaint, plaintiff alleges that on May 22, 2013, he met with the president of Akrimax (the "PA") and the vice president of marketing for the company (the "VPA"). Plaintiff claims that the VPA told him he had learned the tirosint.com domain name was up for auction, and someone at Go Daddy had informed him that the owner of the domain name would have had to authorize the auction. Plaintiff allegedly told the Akrimax representative that he did not authorize the auction.

Plaintiff claims that he called the VPA a liar and said he was fabricating the story to make him look bad. He challenged the VPA. Plaintiff said he should agree to quit his position with Akrimax if plaintiff could prove that plaintiff did not put the tironsint.com domain name up for auction. The PA left the meeting and said he would not deal with this kind of behavior.

Plaintiff claims that, after the meeting, he had several telephone calls with persons at Go Daddy and he recorded the calls. According to plaintiff, in these conversations, persons at Go Daddy confirmed that he had never authorized the auction of the tirosint.com domain name. Plaintiff alleges, however, that the VPA had in his possession a taped conversation with a

representative of Go Daddy, who "verified" to the VPA that plaintiff had, in fact, authorized the auction of the domain name. The Go Daddy representative also allegedly said that Go Daddy would never have put the tirosint.com domain name up for auction without plaintiff's approval.

Plaintiff claims that, as a result of the telephone call indicating he had authorized the auction, his relationship with Akrimax, the principal owner of Akrimax, the PA, and the VPA "has been destroyed." He said that Akrimax began to "curtail its work with Metaphor." He claims his relationship with Akrimax's principal owner "has been irreparably damaged."

Plaintiff alleges that the VPA has used the taped conversation with the Go Daddy representative as a means to diminish his role in the advertising of all the products that Akrimax distributes. Plaintiff claims that, although he had provided Akrimax with recorded conversations with Go Daddy's representative confirming that he did not authorize the auction of the tirosint.com domain name, "the damage to his business and his reputation has been done."

Plaintiff alleges that Go Daddy was negligent in offering the tirosint.com website for sale, by sending the VPA a confirmation of the bid, and by confirming to the VPA that plaintiff had authorized the domain name auction. Plaintiff

alleges that, as a result of Go Daddy's negligence, his business with his "most important client has been damaged" and his reputation and long-term relationship with Akrimax's principal owner "has been irreparably harmed." Plaintiff sought $10 million in damages, the award of attorney's fees, and such other relief as the court deemed just.

On November 12, 2013, Go Daddy filed a motion to dismiss the complaint. It argued that, although plaintiff had asserted a negligence claim, under the economic loss doctrine, the claim was essentially a contract claim arising under the Agreement. Go Daddy argued that the Agreement's forum selection clause requires plaintiff to pursue his claim in a court in Arizona. Plaintiff opposed the motion.

On February 14, 2014, the trial court heard oral argument on the motion. Thereafter, the court filed an order dated March 5, 2014, dismissing the complaint with prejudice. In an accompanying statement of reasons, the court stated that the economic loss doctrine applied and, although plaintiff was seeking damages under a negligence theory, plaintiff's alleged losses arose from the Agreement and were economic losses. Thus, the complaint did not assert a cognizable tort claim.

The court also rejected plaintiff's contention that the Agreement was unconscionable and unfairly one-sided, noting that

plaintiff was sophisticated in business, specifically the advertising business. The court concluded that plaintiff was bound by the Agreement, and the Agreement's forum selection clause required dismissal of the complaint. This appeal followed.

On appeal, plaintiff argues that the trial court erred by dismissing his complaint. He maintains that the economic loss doctrine does not apply in these circumstances. Plaintiff claims that he is asserting a negligence claim, not a contract claim arising under the Agreement. He also contends that his complaint may be read to include claims of defamation, a violation of the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 to -20, and intentional interference with a contractual relationship or prospective economic advantage. In addition, plaintiff contends that the Agreement's forum selection clause should not be enforced because it includes a waiver of the right to trial by jury.

We have considered plaintiff's arguments in light of the record and the applicable legal principles. We conclude that plaintiff's arguments are without sufficient merit to warrant extended discussion. R. 2:11-3(e)(1)(E). We affirm the dismissal of plaintiff's complaint substantially for the reasons set forth

in the statement accompanying the trial court's March 5, 2014 order. We add the following brief comments.

"Economic loss can take the form of either direct or consequential damages." Spring Motors Distribs., Inc. v. Ford Motor Co., 98 N.J. 555, 566 (1985). "Under New Jersey law, the economic loss doctrine defines the boundary between the overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort[.]" Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 244 (3d Cir. 2010) (internal quotation marks and citations omitted).

The purpose of the economic loss doctrine "is to strike an equitable balance between countervailing public policies[] that exist in tort and contracts law." Ibid. (internal quotation marks and citations omitted). The purpose of a tort duty is to protect society's interest in freedom from harm, and a duty arises without reference to any agreement between the parties. Spring Motors, supra, 98 N.J. at 579. On the other hand, a contractual duty "arises from society's interest in the performance of promises." Ibid.

Although a plaintiff's complaint may sound in tort, the action will be governed by contract principles if it "'essentially arises in contract rather than tort[.]'" Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 309 (2001) (quoting

Wasserstein v. Kovatch, 261 N.J. Super. 277, 286 (App. Div. 1993)). One factor that is considered in determining whether a matter is a tort or contract action is whether the plaintiff is seeking recovery for intangible economic loss. Id. at 310 (citing Prosser & Keeton on the Law of Torts, § 92 at 656-58 (5th ed. 1984)).

"When a company agrees to render a service or sell a product, a contract normally will define the scope of the parties' specific obligations." Id. at 316. Furthermore, "a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." Ibid. (citing New Mea Constr. Corp. v. Harper, 203 N.J. Super. 486, 493-94 (App. Div. 1985)).

As indicated in the complaint, plaintiff's relationship with Go Daddy was entirely contractual in nature. Plaintiff purchased the tirosint.com domain name in July 2012, with a registration period of one year. The purchase was subject to the terms spelled out in the Agreement. As Go Daddy points out, the core of the parties' relationship was that Go Daddy would provide plaintiff the exclusive and unfettered right to the tirosint.com domain name, and ensure the product information on the website was available to persons who have access to the internet.

Plaintiff essentially claims that Go Daddy breached the Agreement by placing the domain name up for auction without his authorization. Moreover, the damages that plaintiff seeks are economic losses allegedly sustained as a result of that breach. Thus, the trial court correctly determined that plaintiff's claims are essentially contractual in nature and a tort claim based on the allegations is not cognizable.

Plaintiff argues that, aside from any contract-based claim, his complaint sets forth viable tort-based causes of action. We disagree. Plaintiff suggests that his complaint can be read to state a claim of defamation, but such a claim requires a statement reasonably susceptible of a defamatory meaning. See Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 765 (1989) (citations omitted). Plaintiff's complaint does not reference any statement that could be reasonably viewed as defamatory.

Plaintiff also asserts that his factual allegations support a claim under the CFA. However, to state a claim under the CFA, the plaintiff must show, among other things, that the defendant engaged in some act or practice declared to be unlawful by the CFA. Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009) (citations omitted). N.J.S.A. 56:8-2 provides in part that it is unlawful for any person to use or employ "any unconscionable

commercial practice, deception, fraud, false pretense, false promise, misrepresentation" or knowingly conceal, suppress or omit "any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate[.]"

Here, plaintiff merely claims that Go Daddy negligently represented to the VPA that plaintiff had authorized the auction of the tirosint.com domain name, but he does not allege Go Daddy made any such representation to him. There is, moreover, no allegation that the statement was made in connection with the "sale or advertisement" of the services covered by the Agreement. Furthermore, plaintiff does not claim that Go Daddy's alleged misstatement constitutes an unconscionable commercial practice.

In addition, plaintiff asserts that his complaint sets forth sufficient facts to support claims for tortious interference with contract or prospective economic advantage. To support such claims, plaintiff must establish, among other things, that the interference was done with malice. Printing Mart-Morristown, supra, 116 N.J. at 751 (citations omitted). In this context, malice means that "the harm was inflicted intentionally and without justification or excuse." Ibid. (citing Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J.

552, 563 (1955)). Plaintiff's complaint lacks any allegation that Go Daddy acted to harm his contractual relations or prospective economic advantage maliciously, intentionally or without justification.

Plaintiff further argues that the trial court erred by finding that the forum selection clause in the Agreement was enforceable and required plaintiff to pursue his claims in a court in Arizona. Again, we disagree. Forum selection clauses are prima facie valid and enforceable in New Jersey. Caspi v. The Microsoft Network, L.L.C., 323 N.J. Super. 118, 122 (App. Div.) (citation omitted), certif. denied, 162 N.J. 199 (1999).

Nevertheless, New Jersey courts will not enforce a forum selection clause if the clause is "a result of fraud or overweening bargaining power," enforcement of the clause would violate "strong public policy of the local forum," or "enforcement would be seriously inconvenient for the trial[.]" Wilfred MacDonald, Inc. v. Cushman, Inc., 256 N.J. Super. 58, 63-64 (App. Div.) (citation omitted), certif. denied, 130 N.J. 17 (1992).

Here, plaintiff had reasonable notice of the forum selection clause. It was not proffered unfairly or with a design to conceal its terms. Moreover, there is no evidence that plaintiff's acceptance of the Agreement as a condition to

purchase the domain name was the result of any fraud or overweening bargaining power.

In addition, as the trial court pointed out in its statement of reasons, plaintiff is a sophisticated businessman. The court noted that plaintiff is engaged in the advertising business, in which the "knowledge of the impact of contracts including those similar to" the Agreement are a "requisite of success." Furthermore, enforcement of the forum selection clause would not violate any strong public policy or inconvenience a trial.

Thus, the record supports the trial court's determination that plaintiff's claims are contract-based and arose under the Agreement. The court correctly determined that plaintiff was bound by the forum selection clause in the Agreement and required to assert his claim in a court in Arizona. Therefore, the court correctly decided that the complaint must be dismissed.

However, because the trial court did not address the complaint on its merits, the court erred by dismissing the complaint with prejudice. See Exxon Research & Eng'g Co. v. Indus. Risk Insurers, 341 N.J. Super. 489, 519 (App. Div. 2001) (holding that dismissal predicated in part on a forum selection clause should be without prejudice because it did not adjudicate

the merits of the complaint). See also Pressler & Verniero, Current N.J. Court Rules, comment 4 on R. 4:37-2 (2015) (dismissal on the merits generally is with prejudice, while dismissal based on the procedural inability to consider a case is without prejudice) (citing Watkins v. Resorts Int'l Hotel & Casino, 124 N.J. 398, 415-16 (1991)). Accordingly, we remand the matter to the trial court for entry of an amended judgment dismissing the complaint without prejudice.

Affirmed and remanded to the trial court for entry of an amended judgment in conformity with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION