574 A.2d 44

CHARLES D'ARRIGO, PLAINTIFF–RESPONDENT, v. NEW JERSEY STATE BOARD OF MEDIATION, DEFENDANT, AND BERGEN COUNTY UTILITIES AUTHORITY, DEFENDANT–APPELLANT, AND UTILITY WORKERS UNION OF AMERICA, AFL–CIO, LOCAL 534, INTERVENOR.

Argued February 13, 1990—Decided May 31, 1990.

*Brian Giblin* argued the cause for appellant (*Giblin & Giblin*, attorneys; *Paul J. Giblin*, of counsel and on the brief).

*Manuel A. Correia* argued the cause for respondent (*Loccke & Correia*, attorneys).

*Dennis J. Alessi* argued the cause for intervenor (*Fox and Fox*, attorneys; *Stacey B. Rosenberg*, on the brief).

*Robert E. Anderson*, General Counsel, submitted a brief on behalf of *amicus curiae* Public Employment Relations Commission.

*Mark C. Rushfield* submitted a brief on behalf of *amicus curiae* Joint Council #73, International Brotherhood of Teamsters, Chauffeurs, Helpers and Warehousemen of America, AFL–CIO (*Guazzo, Perelson, Rushfield & Guazzo*, attorneys).

The opinion of the Court was delivered by

O'HERN, J.

The question in this case is whether a public employee covered under a collective negotiations agreement has the right to invoke the arbitration provisions included in the grievance machinery of the contract. We hold that absent clear language in the agreement conferring such a right on an employee, the

employee organization has the exclusive right to invoke the arbitration provisions of the contract. In turn, the employee organization owes a duty of fair representation to the employee and must answer for any breach of that duty.

I

The case arises from plaintiff's complaint against the New Jersey State Board of Mediation and his employer, Bergen County Utilities Authority (BCUA or Authority), demanding that the State Board of Mediation (Board) be directed to invoke the arbitration provisions to resolve a grievance between the plaintiff and his employer. Plaintiff's complaint showed that he had been employed by BCUA from August 1983 until about December 10, 1985, during which time he was a member of the Utilities Workers Union of America AFL–CIO Local 534 (Local 534). He asserted that the collective agreement between BCUA and Local 534 provided for arbitration of grievances, and specifically provided that an individual member could process his or her own grievance. On December 10, 1985, plaintiff received a final notice of disciplinary action from BCUA terminating his employment with the Authority because of unauthorized absences. Over the course of subsequent months, there were numerous communications between his lawyer and the lawyers for BCUA.

On September 10, 1986, the attorney for BCUA informed plaintiff's attorney by letter that as a provisional employee plaintiff had no Civil Service status and was not entitled to Civil Service protection. He had received a departmental hearing on December 10, 1985, at which he was represented by his union, Local 534. The letter informed plaintiff's counsel that the union had indicated that it was "processing Mr. D'Arrigo's grievance to final and binding arbitration." It informed him that the BCUA attorney would shortly receive a list of arbitrators, one of whom would resolve the dispute.

Apparently the union later determined not to invoke the arbitration provisions of the labor agreement, and plaintiff instituted action to compel the Board to supply to plaintiff and BCUA a list of arbitrators for the selection of one to conduct the grievance arbitration between the parties.

In response to an order to show cause, the State Board of Mediation explained to the court that the arbitration request that plaintiff had submitted to the Board was denied because the individual plaintiff is not a party to the collective negotiations agreement between Local 534 and BCUA. Under the Board's policy, only the parties to an agreement may initiate arbitration. Inasmuch as Local 534 had not sanctioned the employee's request to proceed to arbitration, the Board was without authority to offer a panel of arbitrators to an aggrieved employee. The Chancery Division entered judgment dismissing plaintiff's complaint.

The Appellate Division reversed, directing the Board to forward a list of arbitrators. 228 *N.J.Super.* 189, 549 *A.*2d 451 (1988). The court reasoned that because the agreement expressly provides for employees to process their own grievances, and the grievance procedure includes arbitration, under *Fagliarone v. Consolidated Film Industries, Inc.*, 20 *N.J.Misc.* 193, 26 *A.*2d 425 (Cir.Ct.1942), *aff'd*, 131 *N.J.L.* 315, 36 *A.*2d 297 (E. & A.1944), plaintiff could compel arbitration. It ruled that the selected arbitrator should determine both the timeliness of the grievance and the merits of plaintiff's claim. *Id.* 20 *N.J. Misc.* at 198–99, 26 *A.*2d 425.

We granted the petition for certification filed by BCUA, 115 *N.J.* 73, 556 *A.*2d 1217 (1989), and permitted intervention by Local 534. We also allowed the Public Employment Relations Commission and Joint Council # 73, International Brotherhood of Teamsters, to participate as *amici curiae.*

II

We have often reviewed the history of public-employee labor relations in New Jersey. Public employees have a constitution-

al right "to organize, present to and make known to the State * * * their grievances and proposals through representatives of their own choosing." *N.J. Const.* of 1947 art. 1, para. 19. To "flesh out the constitutional guarantees," *Lullo v. International Ass'n of Fire Fighters Local 1066*, 55 *N.J.* 409, 416, 262 *A.*2d 681 (1970), the Legislature, in 1968, enacted the New Jersey Employer–Employee Relations Act (codified as amended at *N.J. S.A.* 34:13A–1 to –21). The Act specifies that "[r]epresentatives * * * selected by public employees * * * shall be the exclusive representatives for collective negotiation concerning terms and conditions of employment * * *." *N.J.S.A.* 34:13A–5.3.

That exclusive representation is the keystone of sound labor-management relations. *Lullo* explains why that is so. "The labor union movement was born of the realization that a single employee had no substantial economic strength. He had little leverage beyond the sale of his own efforts to aid him in obtaining fair wages, hours of work and working conditions." 55 *N.J.* at 425, 262 *A.*2d 681 (citing *N.L.R.B. v. Jones & Laughlin Steel Corp.*, 301 *U.S.* 1, 33–34, 57 *S.Ct.* 615, 622–623, 81 *L.Ed.* 893, 909 (1937)). Hence, in union there is strength. The union movement could not accomplish its major aims

> if numerous individual employees wished to represent themselves or groups of employees chose different unions or organizations for the purpose. Such absence of solidarity and diffusion of collective strength would promote rivalries, would serve disparate rather than uniform overall objectives, and in many situations would frustrate the employees' community interests. [*Lullo, supra,* 55 *N.J.* at 426, 262 *A.*2d 681.]

Thus, *Lullo* continues, the democratic principle of majority control prevailed on the national scene. The representative freely chosen by a majority of employees in an appropriate unit to represent their collective interests in bargaining with the employer gained the exclusive right to do so. Beyond doubt, such exclusivity—the majority rule concept—is now at the core of our national labor policy. *Ibid.* (citing *N.L.R.B. v. Allis-Chalmers Mfg. Co.*, 388 *U.S.* 175, 180, 87 *S.Ct.* 2001, 2006, 18 *L.Ed.*2d 1123, 1127–28 (1967)). The Second Circuit implicitly

invoked that principle when ruling that a labor contract that lacked clear language empowering an individual employee to compel arbitration failed to confer such power. *Black–Clawson Co. v. International Ass'n of Machinists Lodge 355*, 313 *F.*2d 179 (1962). That court emphasized that the right to arbitrate under a collective agreement is ordinarily incident to the employer-union relationship rather than the employer-employee relationship. *Id.* at 184.

But there is a corresponding duty on the part of the union to perform the "processing of grievances for all employees in the unit, [and] the right to do so must always be exercised with complete good faith, with honesty of purpose and without unfair discrimination against a dissident employee or group of employees." *Lullo, supra*, 55 *N.J.* at 427, 262 *A.*2d 681. As is done in counterpart federal labor relations, *Vaca v. Sipes*, 386 *U.S.* 171, 177, 87 *S.Ct.* 903, 909, 17 *L.Ed.*2d 842, 850 (1967), we impose on the majority representative the obligation of fair representation. If a meritorious grievance is not pursued on behalf of an employee, the labor representative is subject to the charge of an unfair labor practice under *N.J.S.A.* 34:13A–5.4b. The employee may also have a cause of action in law. *See Vaca v. Sipes, supra*, 386 *U.S.* at 187–88, 87 *S.Ct.* at 915–16, 17 *L.Ed.*2d at 856. Thus an extensive body of law has developed that has successfully balanced the rights of the union versus the rights of the individual, guaranteeing that individual employees' rights not be trampled on by what labor representatives before us described as a "tyranny of the majority."

## III

Plaintiff does not assert that those general principles of labor relations are in need of overhaul, but rather that in the specific circumstances of this case both the language of the agreement itself and the circumstances of his grievance warrant departure from the general rules.

With respect to the language of the agreement, plaintiff emphasizes that this is a termination case and that Article II, part three of the contract, entitled "Discharge and Discipline," provides in subsection two as follows: "Any discharge, suspension or other discipline which results in loss of pay *shall be subject to grievance and arbitration as set forth in Article VII, subject to all applicable State and Federal laws.*" (Emphasis added.)

Article VII, part one, "Grievance Procedure," sets forth the procedures whereby "any employee covered by this Agreement" is entitled to resolve alleged grievances. More specifically, step three, subsection three, provides:

Nothing contained in this Article shall limit the right of an employee to process his or her own grievance provided, however, the Union shall be notified by the Authority of all such situations and shall have the right to be present during the same, and, further provided that any agreement reached with any such employee shall not violate this Agreement.

As noted, the Appellate Division agreed with defendant, referring to *Fagliarone v. Consolidated Film Industries, Inc.,* *supra,* 20 *N.J.Misc.* 193, 26 *A.*2d 425. In that case, affirmed by our then-high court, a circuit court upheld an employee's invocation of the statutory right to arbitration based on his status as a third-party beneficiary of the contract between his union and his employer. That labor contract, however, expressly and unambiguously provided for an employee to compel arbitration. *Id.* at 193, 26 *A.*2d 425.

Here, in contrast, we believe that a fair reading of the entire agreement conforms to the general presumption of exclusivity at least with respect to the invocation of the arbitration provisions. The arbitration provisions, which are also in Article VII but separate from the grievance provisions, state:

If the grievance cannot be resolved at Step 3 then it may be submitted to final and binding arbitration within thirty (30) business days of receipt of the answer at Step 3. The parties shall use the New Jersey Board of Mediation for the purpose of selecting an arbitrator to hear and decide the grievance. The cost of the arbitration shall be shared equally by the parties. The arbitrator's decision shall be submitted within thirty (30) business days of the final arbitration session.

Article I of the agreement identifies the Authority and the union as the parties to the contract.

There are sound reasons for distinguishing between the right of an employee individually to initiate a grievance and the right of an employee to invoke the binding arbitration machinery. The earlier steps in the grievance process may often resolve rather routine issues. An example given is eligibility for overtime pay. The system of shop management simply cannot work, we are told, if every minor labor dispute has to be resolved by union intervention.

The earlier steps in the grievance procedure seem ideally suited to a flexible approach. For example, step one contemplates that "[t]he aggrieved employee or the Steward shall present and discuss the grievance with [the] supervisor." The supervisor must reply within ten days and the reply may be oral. Step two contemplates that the grievance shall be reduced to writing and submitted to the chief engineer by "the aggrieved party." This reply, however, shall be written. Step three then contemplates a somewhat more formal process during which a meeting would be arranged between representatives of the union, the aggrieved employee, and the chief of personnel with the object of settling the grievance. A written reply is required at this stage.

Step three contains the language on which plaintiff relies. We believe, however, that the language should be viewed in light of the previous steps, which contemplate a flexible approach to the problems. Granted the language in step two refers to an aggrieved party in terms that undoubtedly permit the employee to make that presentation, we do not believe that the language in step three clearly empowers this employee to go forward to arbitration on his own initiative. *Accord Black–Clawson, supra,* 313 *F.*2d at 183 (similarly analyzing steps of a grievance procedure to limit employee rights).

In addition, differentiating between an employee's right to process a grievance and the employee organization's right to

invoke the arbitration provisions can reflect an employer's decision that it would be too disruptive of labor relations to permit arbitration at an individual employee's election.

Given the settled presumptions of labor relations law, we agree with defendants that the presumed exclusive right of the union to invoke the provisions of the arbitration clause are not overcome by the conflicting references contained in the grievance steps that precede arbitration. As noted, these grievance proceedings can be and should be more flexible and, of course, are always subject to the express requirement that any agreement "reached with [an individual] employee shall not violate this Agreement."

Plaintiff has not been deprived of a forum to vindicate his claims of unfair representation. He made such a claim to the Public Employee Relations Commission, which considered and rejected his claim of unfair representation. In addition, he may have had a cause of action in law against his union.

The judgment of the Appellate Division is reversed.

*For reversal* Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance* —None.