2002 OK CIV APP 24

**Jane WILCOXSON, Plaintiff/Appellee,**

v.

**William TACKETT, City Manager of the City of Woodward; and City of Woodward, a municipal corporation, Defendants/Appellants.**

**No. 94,595.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Oct. 16, 2001.

Rehearing Denied Nov. 14, 2001.

Certiorari Denied Feb. 5, 2002.

James R. Moore, James R. Moore & Associates, P.C., Oklahoma City, OK, for Plaintiff/Appellee.

Margaret McMorrow–Love, Oklahoma City, OK, for Defendants/Appellants.

JOE C. TAYLOR, Judge.

¶1 Defendants, the City of Woodward (City) and its city manager, William Tackett (Tackett), seek review of the trial court's issuance of a writ of mandamus compelling Defendants to arbitrate a grievance by Plaintiff, Jane Wilcoxson, concerning her termination as a police officer. Based on our review of the record, the parties' briefs, and the applicable law, we reverse and remand.

¶2 The basic underlying facts are not disputed. Plaintiff is a former sergeant with City's police department. On September 7, 1999, she was notified by Tackett that her employment was being terminated. At the time of her termination, Plaintiff was covered by a collective bargaining agreement (CBA) between City and the Fraternal Order of Police Lodge 187(FOP), which under the CBA is designated as the "exclusive bargaining representative" for City police officers, including Plaintiff.

¶3 Plaintiff initiated a grievance pursuant to Article 8 of the CBA, which provides for a multi-step grievance procedure as follows:

Step 1. The aggrieved Employee(s), with or without the F.O.P. representative, will present the grievance in writing to his immediate supervisor and forward a copy to the President of the F.O.P or his designee. The immediate supervisor will give his verbal answer within two (2) full business days of the date or presentation of the grievance.

Step 2. If the grievance is not settled in Step 1, ... the aggrieved Employee(s) will refer the grievance to the shift supervisor.

Step 3. If the grievance is not settled in Step 2 ..., the aggrieved Employee(s) will present the grievance to the F.O.P Lodge.... If the F.O.P. Lodge shall determine no grievance exists no further action will be taken. If the F.O.P. determines a grievance does exist, the grievance shall proceed to Step 4....

Step 4. The F.O.P. Lodge will present the grievance to the Chief of Police ... [and] the Chief will give a written answer within five (5) business days after presentation.

Step 5. If the grievance is not settled in Step 4 ..., it shall be referred to the City Manager [who] shall make a ruling concerning the grievance with [sic] five (5) business days after receipt of the grievance.

Step 6. If the grievance is not settled in Step 5, and if the F.O.P. Lodge decides a valid grievance exists, with [sic] five business days from the City Manager's ruling, the F.O.P. may request that the matter be submitted to arbitration for final decision....

¶4 Plaintiff completed Steps 1 and 2 on her own, and pursuant to Step 3 notified FOP that she wanted to pursue the grievance. FOP determined Plaintiff's grievance

was valid and presented it to the Woodward Chief of Police, who denied it. The grievance was referred under Step 5 to Tackett, who also denied it. FOP then sent Plaintiff a memo informing her that she could "take [her] grievance onto arbitration without the support of Lodge 187." The memo also stated, "In the event that you take your grievance to arbitration, you will need to give us [FOP] the name and address of your attorney so that we can send him a check in the amount of $200.00 for legal expense."

¶ 5 Plaintiff notified Tackett that she requested arbitration pursuant to the CBA. Tackett responded with a letter stating that City had determined Plaintiff's dispute was not arbitrable because "only the FOP Lodge 187, as the party to the Collective Bargaining Agreement, has the right to request arbitration pursuant to Article 8, Section 3," and "Lodge 187 has not exercised that right." The letter also asserted that the notice requesting arbitration was untimely under the CBA, because it was not received by City within five business days from the date of Tackett's denial of Plaintiff's grievance.[1]

¶ 6 Plaintiff filed this action seeking a writ of mandamus compelling Defendants to submit her grievance to arbitration pursuant to the CBA and the Fire and Police Arbitration Act, 11 O.S.1991 Supp.2000 §§ 51–101 through 51–113(Act). The trial court issued an alternative writ and set the matter for a show cause hearing, at which Tackett and an FOP representative, Thomas Bradt, testified. Bradt testified that FOP handled Plaintiff's grievance in the manner that it did because Plaintiff is not a dues-paying member of FOP. He explained that, if Plaintiff had been an FOP member, FOP would have notified City of its decision to seek arbitration on Plaintiff's behalf. Pursuant to FOP bylaws, however, if non-member police officers "file a grievance and it goes to arbitration, the only legal expense they will get from the Lodge is up to an amount of $200," with the remainder borne by the grievant. Bradt also testified

that the language of the FOP memo suggesting Plaintiff could proceed "without the support of Lodge 187" meant only that FOP would not support Plaintiff financially, and that it was not intended as a comment on the validity of Plaintiff's grievance. In fact, FOP had determined Plaintiff had a valid grievance and advised City of that determination in a memo which was admitted into evidence.

¶ 7 Tackett testified City was not aware of FOP policies concerning non-member police officers, and Bradt confirmed that City would not ordinarily be advised of FOP bylaws concerning its handling of such matters internally. As noted above, the CBA recites only that FOP is the bargaining agent for police officers. The agreement does not distinguish between officers who are and are not union members, or make any special provisions for non-union members.

¶ 8 The trial court issued an order requiring Defendants to submit to arbitration. Defendants appeal, asserting that issuance of a writ of mandamus under the circumstances was error. We agree.

¶ 9 Mandamus is an extraordinary equitable remedy, the issuance of which is strictly controlled by statute. *Dale v. City of Yukon*, 1980 OK CIV APP 55, ¶ 12, 618 P.2d 954, 957. "As the terms of 12 O.S.1991, 1451 make clear, mandamus will issue only where petitioner has a clear legal right to the relief sought and respondent has a plain legal duty which he refuses to perform. These requisites, together with inadequacy of other relief, must coincide to warrant issuance of the writ." *Southwestern Bell Tele. Co. v. Oklahoma Corp. Comm'n*, 1994 OK 38, ¶ 17, 873 P.2d 1001, 1007. We do not find the necessary requisites present in the case at bar to support the trial court's issuance of a writ of mandamus against Defendants.

¶ 10 Plaintiff argues Defendants had a "clear legal duty" to submit to arbitration and Plaintiff had a "clear legal right" to arbitration under the CBA and under the Act. The CBA contemplates that a grievance

---

1. Tackett's memo denying Plaintiff's grievance was dated October 22, but Plaintiff did not receive it until October 25. An FOP representative, Thomas Bradt, testified he advised Plaintiff that she had five business days from the date of receipt of Tackett's memo-i.e., until November 1– to ask for arbitration. Plaintiff submitted a letter to City requesting arbitration on November 1. City contends Plaintiff was required to request arbitration within five business days from the date of Tackett's memo, or by October 29. Because we dispose of this matter on other grounds, we do not reach this issue in this opinion.

initially should be filed by an "aggrieved Employee(s), with or without the F.O.P.," with an employee's immediate supervisor, and, if not acted upon by the immediate supervisor, with the employee's shift supervisor. Thereafter, the CBA states the employee should present the grievance to the FOP Lodge, which is to make a determination as to the validity and merit of the grievance. The CBA does not leave the decision whether to seek arbitration of a grievance to an individual employee. Rather, it clearly contemplates that such decision should be made by FOP, stating specifically in Step 6 that "*F.O.P.* may request that the matter be submitted to arbitration for final decision." (Emphasis added.) Conspicuously absent from this portion of the CBA is any mention of an individual employee's involvement in an arbitration demand. The CBA also is explicit in designating FOP as the "exclusive" bargaining agent for *all* police officers, which undisputably includes Plaintiff.

¶ 11 Plaintiff also argues that § 51–111 of the Act imposes a "clear duty" to arbitrate on Defendants. It is true that § 51–111 mandates that a collective bargaining agreement contain provisions establishing arbitration procedures "for the immediate and speedy resolution and determination" of disputes "involving the interpretation or application of any of the provisions" of the agreement or "the actions of any of the parties thereunder." However, this statutory provision does not clearly impose a duty on a city to arbitrate a dispute that, on its face, does not comply with the procedural requirements of the arbitration clause of a duly negotiated collective bargaining agreement. In other words, there is no clear duty in the language of the Act imposing a duty on a city to arbitrate with an individual grievant, simply because it receives a demand from the grievant, when the collective bargaining agreement is clear that the arbitration demand must come from the bargaining agent.

■ ¶ 12 It also is significant that there is no governing legal precedent in Oklahoma on this issue, and that case law from other jurisdictions, including the federal courts, upholds the right of one party to a collective bargaining agreement to insist that the arbitration process set forth in the agreement be adhered to. Language limiting the duty to arbitrate to the parties to the agreement— i.e., the bargaining agent and management representative—is not unusual, and "is typical in language and structure of many such agreements in the field of labor-management relations." *See Black–Clawson Co. v. International Ass'n of Machinists Lodge 355,* 313 F.2d 179, 184 (2d Cir.1962). As the court there noted:

> "The right to arbitrate under a collective agreement is not ordinarily a right incident to the employer-employee relationship, but one which is incident to the relationship between employer and union. Under the collective agreement between the parties, it was the union which had the right to take grievances to arbitration, not the individual employees.... The wording of the grievance clause as a whole clearly indicates that only the union or the employer can demand arbitration."

> ....

> Our conclusion is dictated not merely by the terms of the collective bargaining agreement ... but also by what we consider to be a sound view of labor-management relations. The union represents the employees for the purposes of negotiating and enforcing the terms of the collective bargaining agreement. This is the modern means of bringing about industrial peace and channeling the resolution of intra-plant disputes.

*Id.* at 184, 186 (quoting *Procter & Gamble Indep. Union v. Procter & Gamble Mfg. Co.,* 312 F.2d 181 (2d Cir.1962)). *See also Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903 (1967) (individual employee does not have an absolute right to have grievance taken to arbitration; final adjustment by method agreed upon by parties is the desirable method of settlement); *Malone v. U.S. Postal Serv.,* 526 F.2d 1099 (6th Cir.1975) (employer not required to meet with any representative of an employee other than the exclusive bargaining representative in order to settle employee grievance; bargaining agent has right to represent employees in grievance arbitration, subject to bargaining agent's duty of fair representation); *White v. General Baking Co.,* 263 F.Supp. 264 (D.N.J.1964) (terminated employee has no standing in his own name to compel arbitration under collective bargaining agreement); *D'Arrigo v. New Jersey*

*State Bd. of Mediation*, 119 N.J. 74, 574 A.2d 44 (1990) (individual employee could not compel arbitration under collective bargaining agreement; union had duty of processing grievances for all employees in the bargaining unit, in good faith and without discrimination); *Thomas v. Thompson Sch. Dist. R2–J*, 749 P.2d 966 (Colo.Ct.App.1987) (individual teacher did not have standing to compel arbitration).

¶ 13 While not recognizing an individual employee's right to compel an employer to arbitration, these cases and others *have* recognized potential, alternative remedies available to employees who contend their right to arbitration has been compromised. Such alternative remedies include an action against the employer for breach of contract, if the employee can demonstrate that the union acted unfairly, or based on a third-party beneficiary theory of recovery, if the grievance is not resolved by first resorting to the arbitration procedure set forth in the collective bargaining agreement. *See, e.g., White*, 263 F.Supp. at 267; *Jones v. Int'l Union of Operating Eng'rs*, 72 N.M. 322, 383 P.2d 571, 573–74 (1963); *Jefferson County Sch. Dist. No. R–1 v. Shorey*, 826 P.2d 830, 845–46 (Colo.1992). Another potential remedy is an action against the bargaining representative for breach of the duty of fair representation. *See, e.g., Vaca*, 386 U.S. at 190–93, 87 S.Ct. at 917–18; *White*, 263 F.Supp. at 267.[2] In addition, as Defendants suggest in their appellate brief, Plaintiff may also have a claim under 42 U.S.C. § 1983.

¶ 14 Obviously, the viability of any or all of these remedies under Oklahoma law, as to Plaintiff in the instant action, is not an issue that is before us, and we express no opinion as to whether they may be pressed to a successful conclusion by Plaintiff. However, the fact that such alternative remedies, or any one of them, may be available lends further support to our conclusion that issuance of an extraordinary writ under the circumstances presented was not warranted.

¶ 15 We thus disagree with Plaintiff's contention, and the finding implicit in the trial court's order, that Defendants had a clear legal duty and Plaintiff had a clear legal right—under the CBA or the Act—to arbitration under the circumstances presented. It also appears from the record that Plaintiff had, and may still have, a number of other potential remedies available to her "in the ordinary course of the law." We are aware of nothing that would restrict the trial court, on remand, from allowing Plaintiff leave to amend her original petition to assert alterna-

---

**2.** As noted by the court in *D'Arrigo v. New Jersey State Board of Mediation*, 119 N.J. 74, 574 A.2d 44, 47 (1990) (citations omitted):

> As is done in counterpart federal labor relations . . . we impose on the majority representative the obligation of fair representation. If a meritorious grievance is not pursued on behalf of an employee, the labor representative is subject to the charge of an unfair labor practice under [New Jersey state law]. . . . The employee may also have a cause of action in law. . . . Thus an extensive body of law has developed that has successfully balanced the rights of the union versus the rights of the individual, guaranteeing that individual employees' rights not be trampled on by what labor representatives before us described as a "tyranny of the majority."

Also instructive in the factual circumstances of the case at bar is the following excerpt from Cox, *Rights Under a Labor Agreement*, 69 Harv. L.Rev. 601, 652 (1956) (emphasis added) (footnotes omitted):

> While the rule which bars an individual employee from bringing an action on the contract when the union is unwilling to take the case to arbitration is sound if the union has made an adjustment or is satisfied that the grievance lacks merit, nevertheless it would work injustice in situations where the union is unwilling to press the claim because of indifference or reluctance to suffer the expense. *Both factors come into play under open-shop contracts when a grievance having no precedent value is filed by a nonmember, whose failure to pay dues means that he contributes nothing to the cost of acting as his representative.* One solution would be to open arbitration proceedings to individual grievants. Another alternative is to allow the employee to bring suit against the employer and union as codefendants upon analogy to the bill in equity which the beneficiary of a trust may maintain against the trustee who fails to press a claim against a third person. The suit would fail on the merits if it appeared that the collective bargaining representative had dropped the grievance for lack of merit or had negotiated a reasonable adjustment. Perhaps the wisest solution is to give the union a choice between (a) preserving the single uniform method of administering the contract by permitting the employee to use its name at his own expense in carrying the case to the higher steps of the grievance procedure and ultimately to arbitration, and (b) suffering an independent suit against it and the employer.

tive theories of recovery against Defendants and/or FOP, as the case may be.

¶ 16 While the issuance of a writ of mandamus is left to the sound, equitable discretion of the trial court, on review this court will examine the record presented, draw its own conclusions, and reverse the trial court's order if it is against the clear weight of the evidence or constitutes an abuse of discretion. *See Fears v. Cattlemen's Inv. Co.*, 1971 OK 22, ¶ 31, 483 P.2d 724, 730; *Dale v. City of Yukon*, 1980 OK CIV APP 55, ¶ 14, 618 P.2d 954, 957. Given the lack of a clear statutory or contractual duty on City to arbitrate solely at the demand of an individual police officer, when the CBA at issue clearly contemplates that arbitration may be requested only by the officer's bargaining agent, the trial court's issuance of a writ of mandamus in this instance was an abuse of discretion and against the clear weight of the evidence. We thus reverse its holding and remand with instructions to dissolve the writ.

¶ 17 REVERSED AND REMANDED WITH INSTRUCTIONS.

¶ 18 STUBBLEFIELD, P.J., and RAPP, J., concur.