2013 OK CIV APP 44

Kevin SMITH, Plaintiff/Appellant,

v.

CITY OF OKLAHOMA CITY, Defendant/Appellee.

No. 108,206.

Court of Civil Appeals of Oklahoma, Division No. 3.

Feb. 15, 2013.

Certiorari Denied April 29, 2013.

Jack S. Dawson, Brycie M. Loepp, Joseph H. Rogers, III, Miller Dollarhide, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Kenneth Jordan, Municipal Counselor, Paula A. Kelly, Jami J. Beavers, Amy Hooper Harrison, Suzanne Denise Shiff Paulson, Assistant Municipal Counselors, Oklahoma City, Oklahoma, for Defendant/Appellee.

ROBERT D. BELL, Presiding Judge.

¶1 In this action for unjust termination from employment, Plaintiff/Appellant, Kevin Smith (Smith), appeals from the portion of the trial court's judgment entered upon a jury verdict overruling his motion for reinstatement to employment. Defendant/Appellee, the City of Oklahoma City (City), counter-appeals the trial court's order denying City's motion for judgment notwithstanding the verdict (JNOV). After considering the parties' briefs and arguments of counsel,[1] we affirm the trial court's order denying City's motion for JNOV and the portion of the trial court's judgment denying Smith's request for reinstatement to employment.

¶2 Smith worked for City in the Animal Welfare Division for approximately four and one-half years. City employed Smith as an animal control officer. Smith is a member of the American Federation of State, County and Municipal Employees Local 2406 (Union). The Union is the exclusive bargaining agent for City's employees covered by a Collective Bargaining Agreement (CBA). The CBA contains the following grievance process to resolve any controversy between City and Union's members concerning the interpretation, enforcement, or application of the CBA's provisions pertaining to employment terms and conditions:

> *8.3* Controversy between the Employer and the Bargaining Agent or any other employee concerning the interpretation, enforcement or application of any provision of this Agreement, concerning any of the terms or conditions of employment contained in this Agreement shall be considered a contract grievance and adjusted in the following manner.

> \*      \*      \*

> STEP II ...

> (b) The Department Head shall submit his/her answer to the Union Business Agent with a copy to the Personnel Department and the employee involved within ten (10) business days of the receipt of the grievance. If the Department Head fails to respond to the grievance within the ten (10) business days, the grievance shall be considered denied and the grievant may advance the grievance to the third step of the grievance procedure.

> STEP III If the grievance has not been settled within that time, the Bargaining Agent shall send the grievance within seven (7) calendar days to the Personnel Director, or designee for review, and possible resolution....

> STEP IV If the grievance has not been settled by the provisions of Step III, it shall be sent within five (5) business days to the City Manager for adjustment. The City Manager shall submit his answers to the Personnel Director, the Department Head, the employee involved, and the Grievance Committee within seven (7) business days.

> *8.4* If the City Manager and the Union Grievance Committee have not settled the Grievance within that time, it may be submitted to arbitration for adjustment as follows:

> \*      \*      \*

> (d) With respect to the interpretation, enforcement, or application of the provisions of this Agreement, which do not relate to the statutory and charter authority of the

---

1. The parties appeared before this Court and presented oral arguments on January 24, 2013.

City Council and the City Manager, the decision, findings and recommendation of the arbitrator shall be final and binding on the parties to this Agreement.

\* \* \*

*8.6* All time limits set forth in this Article may be extended by mutual agreement, but if not so extended, they must be strict‑ly observed.

\* \* \*

(c) ... If the grievance is not advanced within five (5) business days from the date of the City's notice, the grievance shall be considered settled, and the right to pro‑ceed further in the grievance procedure shall be forfeited.

¶ 3 Smith was accused of leaving a dog on a truck for nine days. Smith denied this accusation. A pre-termination hearing was held to assess whether Smith violated the Animal Welfare Division Policy. Smith was terminated for cause two days later. City alleged Smith's action showed a fundamental lack of judgment, was contrary to training, and constituted misfeasance. Smith request‑ed the Union to file a grievance on his behalf. The grievance was timely filed and reviewed pursuant to Steps III and IV of the CBA. Smith's grievance was unsuccessful. Under the CBA, Union or City had the sole power to proceed to arbitration. Union did not submit the grievance to arbitration.

¶ 4 Smith thereafter initiated this wrongful termination lawsuit in district court. City moved for summary judgment in its favor alleging the trial court lacked subject matter jurisdiction to consider Smith's action be‑cause the CBA's grievance procedures were his sole avenue for redress. Since neither Smith nor Union timely submitted the griev‑ance to arbitration, City alleged Smith for‑feited any further appeal to an arbitrator or the court under the CBA. The trial court overruled City's motion and submitted the case to a jury.

¶ 5 The jury held Smith's termination was unjustified and awarded him damages for

back pay in the amount of $7,200.00. Smith filed a motion to be reinstated to his employ‑ment pursuant to the CBA because the jury determined he was unjustly discharged. City filed a motion for JNOV asserting the judgment should be directed in favor of City because the district court lacked subject mat‑ter jurisdiction to determine whether Smith's employment termination was unjust or with‑out cause. City alleged the district court lacked subject matter jurisdiction because this dispute was subject to the grievance procedures and arbitration mandate in the CBA. The trial court denied City's JNOV motion and Smith's motion for reinstatement. Smith appeals from the portion of the trial court's judgment denying his motion for rein‑statement. City counter-appeals from the trial court's order denying its motion for JNOV.

## SUBJECT MATTER JURISDICTION

¶ 6 City argues the trial court lacked subject matter jurisdiction to consider Smith's action for breach of the CBA because the CBA contained a mandatory arbitration clause, and since neither City nor Union pursued the final arbitration step, the dispute was deemed settled under the CBA and was not subject to judicial review. In overruling City's motion for JNOV, the trial court re‑jected City's challenge to its subject matter jurisdiction. The question as to whether a district court has subject matter jurisdiction presents a question of law. *Tulsa Order of Police Lodge No. 93 ex rel. Tedrick v. City of Tulsa*, 2001 OK CIV APP 153, ¶ 12, 39 P.3d 152, 155. We review issues of law *de novo*, and this Court has plenary, non-deferential authority to re-examine the trial court's legal rulings. *Id.*

¶ 7 As support for its argument, City cites *City of Yukon v. International Ass'n. of Firefighters, Local 2055*, 1990 OK 48, ¶ 8, 792 P.2d 1176, which reiterated that Oklahoma adopted the Steelworkers Trilogy[2] for the expressed policy favoring arbitration, and *Voss v. City of Oklahoma City*, 1980 OK 148,

---

**2.** *United Steelworkers of America v. American Mfg.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior and Gulf Nav. Co.*, 363 U.S. 574, 80 S.Ct.

1347, 4 L.Ed.2d 1409 (1960); and *United Steel‑workers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

618 P.2d 925. In *Voss,* the City of Oklahoma City terminated the plaintiff from his employment as a firefighter. The termination was upheld by the review board and the City Manager, whose decision was final. The plaintiff filed suit in district court for breach of his employment contract. The jury rendered a verdict in favor of the plaintiff. The City filed a motion for JNOV arguing the district court lacked jurisdiction because the CBA contained grievance procedures which constituted the plaintiff's exclusive remedy. The district court sustained the motion.

¶ 8 The Supreme Court affirmed, holding the union waived the employee's rights to proceed in district court by adopting the CBA and the grievance procedure in the CBA, including mandatory arbitration, was the plaintiff's exclusive remedy. *Id.* at ¶ 9, 618 P.2d at 928–29. *Voss* explained "[c]ourts generally favor arbitration statutes and collective bargaining agreements because they provide substantial justice by an immediate and speedy resolution with a minimum of court interference." *Id.* at ¶ 6, 618 P.2d at 928.

¶ 9 We find the instant case is distinguishable from *Voss. Voss* construed the Fire and Police Arbitration Act, 11 O.S. Supp.1978 § 51–101 *et seq.* This Act expressly *requires* arbitration of disputes in recognition of the public health, safety and welfare demands in prohibiting members of municipal fire and police departments from striking or engaging in work stoppage or slowdown. The instant case does not involve the interpretation or application of a CBA under the Fire and Police Arbitration Act. Furthermore, unlike *Voss,* the CBA in the instant case did **not** require final and binding grievance arbitration to resolve the individual employee's claim against his employer for breach of the CBA as City argues.

¶ 10 Section 8.4 of the instant CBA provides in part: "If the City Manager and the Union Grievance Committee have not settled the Grievance within that time, it *may* be submitted to arbitration for adjustment...." Unlike the word "shall," which normally signifies a directive or command, the word "may" has a well-established discretionary connotation. *See White v. Heng Ly Lim,*

2009 OK 79, 224 P.3d 679, 680 n. 2. Thus, although arbitration is the first choice for resolution, we view the act of requesting arbitration under Section 8.4 of the CBA as discretionary and not mandatory. Therefore, we cannot find that under this CBA, the Union waived Smith's right to proceed in district court.

¶ 11 Furthermore, the later case *Shaffer v. Jeffery,* 1996 OK 47, 915 P.2d 910, clarified agreements to arbitrate are enforceable, but do not deprive district courts of subject matter jurisdiction. *Shaffer* explained a right to arbitrate arises from a written contract and is treated as an affirmative defense and that right (to compel arbitration) may also be waived; thus, that right "does not fit within the category of a traditional challenge to a district court's subject matter jurisdiction." *Id.* at ¶ 7, 915 P.2d at 913.

> This is because subject matter jurisdiction is not dependent upon the consent (or waiver) of a party, and a challenge to subject matter jurisdiction may be raised at any time in the course of the proceedings. Additionally, a lack of subject matter jurisdiction results in dismissal. 12 O.S.1991 § 2012(F)(3). As opposed to this rule of dismissal, a district court has jurisdiction to compel or stay arbitration. 15 O.S.1991 § 803. The affirmative defense of an agreement to arbitrate is not the same thing as lack of subject matter jurisdiction.

*Id.* (Citations omitted.) *See also City of Muskogee v. Martin,* 1990 OK 70, ¶ 22, 796 P.2d 337, 344, which held the district court had subject matter jurisdiction to consider a petition for declaratory relief in a dispute under a collective bargaining agreement notwithstanding that the parties had contractually agreed to submit all contract disputes to arbitration.

¶ 12 We also reject City's contention that the Union's decision to forgo the final step in the grievance procedure settled Smith's grievance and extinguished Smith's remedies under the CBA. Generally, exhaustion of administrative remedies is a jurisdictional prerequisite to judicial review and is

imposed "to aid in the orderly administration of justice and to prevent transfer to the courts of duties imposed by law on administrative agencies." *Martin v. Harrah Indep. Sch. Dist.*, 1975 OK 154, ¶ 8, 543 P.2d 1370, 1372 (citations omitted). But, this doctrine will not bar a district court action that bypasses the final step in the grievance procedure "if the administrative remedy is unavailable, ineffective or would be futile to pursue." *Lone Star Helicopters, Inc. v. State*, 1990 OK 111, ¶ 6, 800 P.2d 235, 237. When the Union, not the employee, is the only party capable of requesting arbitration under a CBA, and the exclusive bargaining agent declines to pursue the optional, final grievance step, we hold under the facts of this case, the administrative arbitration remedy was unavailable, futile to pursue and improperly denied Smith access to judicial review by a court of competent jurisdiction.

¶ 13 We conclude the district court properly exercised subject matter jurisdiction. Accordingly, we hold the trial court did not err when it denied City's motion for JNOV.

## CLAIM FOR REINSTATEMENT

¶ 14 On appeal, Smith contends the trial court erred when it refused to consider his claim for reinstatement. Smith points out Section 9.2 of the CBA provides: "In the event it should be decided under the grievance procedure that the employee was unjustly suspended or discharged, the Employer shall reinstate employee...." Because Smith prevailed on the merits of his claim at trial, he contends his wrongful termination claim was meritorious; thus, the trial court should have considered his claim for reinstatement.

¶ 15 City counters the trial court properly denied Smith's claim for reinstatement. City argues the proper remedy in this breach of employment contract case, not involving an issue of public policy, is monetary compensation and not reinstatement. As support, City cites *Hall v. Farmers Ins. Exch.*, 1985 OK 40, 713 P.2d 1027. *Hall* held: "The general rule of damages for breach of employment contracts is that the aggrieved party is entitled to recover an amount which will compensate him for all the detriment proximately caused by such breach, or which will be likely to result therefrom." *Id.* at ¶ 21, 713 P.2d at 1031.

¶ 16 Alternatively, City argues the only way Smith could have been reinstated to employment was through arbitration, but the Union waived Smith's rights to this remedy when it voted against pursuing arbitration. City mentions that Smith may have an action against Union for breach of its fiduciary duty; nevertheless, Smith is bound by the actions of his exclusive bargaining representative.[3]

¶ 17 Because Smith's claim is based upon breach of the CBA, we agree he is bound by terms of the CBA. Under the CBA, an employee who prevails under the grievance procedures may seek reinstatement as a remedy. Smith was the prevailing party in the district court case; however, he did not prevail under the CBA's contractual grievance procedures. We therefore hold Smith was not entitled to judicial review of his reinstatement claim because he failed to secure affirmative relief through the CBA's grievance procedures. We are cognizant Smith may well have been prevented from prevailing under the grievance procedures due to Union's failure to take his meritorious grievance to arbitration, but Smith's claim for loss of this contractual remedy lies against Union and not City. The trial court's judgment denying Smith's claim for reinstatement is affirmed.

¶ 18 AFFIRMED.

HETHERINGTON, J., concurs.

MITCHELL, J., dissents.

¶ 19 Because the district court lacked subject matter jurisdiction to hear Smith's claim for wrongful termination, I respectfully dissent. The central issue in this case is whether Section 8.3 of the Collective Bargaining Agreement (CBA) entered into between the

---

**3.** In a grievance proceeding under a CBA, a union breaches its duty of fair representation by arbitrarily ignoring a meritorious grievance or processing it in a perfunctory fashion. *Vaca v. Sipes*, 386 U.S. 171, 191, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

City (Employer) and the Plaintiff's representative Union provides the exclusive procedure for settling ·employee grievances covered by that agreement. I believe that it does.

¶ 20 Section 8.3 provides:

Controversy between the Employer and the Bargaining Agent or any other employee concerning the interpretation, enforcement or application of any provision of this Agreement, concerning any of the terms or conditions of employment contained in this Agreement shall be considered a contract grievance and adjusted in the following manner.

The CBA then outlines the procedures to be followed should a grievance arise. The final step in the process is the optional submission of the grievance to arbitration. The majority focuses on the use of the term "may" rather than "shall" when stating that grievances "may be submitted to arbitration for adjustment," concluding that the result of this use of language is a finding that the entire grievance procedure was not intended by the parties to be the exclusive procedure available to employees. However, the use of the term "may" in Section 8.4 only establishes the discretion that exists on behalf of the Union, whom the employees, including Plaintiff, elected as their bargaining agent for purposes of entering into the CBA with Employer. The Union may determine which grievances are meritorious and should be submitted to arbitration. Section 8.3 makes clear that the grievance procedure is the *only* procedure intended to be used to settle disputes with Employer. Should the Union elect to submit a grievance to arbitration, it may do so pursuant to the terms of the CBA; however, it is not necessary that the CBA provide that all grievances shall be submitted to arbitration. If all grievances were *required* to go to arbitration it would render meaningless the several other previous steps in the grievance process.

¶ 21 In *Voss v. City of Oklahoma City*, 1980 OK 148, 618 P.2d 925, the Oklahoma Supreme Court interpreted a provision in a collective bargaining agreement nearly identical to the provision at issue in this case.[4] There, the Court found that "[t]he grievance provisions of the collective bargaining agreement controlled the procedure to be followed in the settlement of grievances." *Id.* ¶ 8, 618 P.2d at 928. Although *Voss* is distinguishable in that it involved the Fire and Police Arbitration Act, I find the analysis in *Voss* equally persuasive in a case such as this, involving a voluntary agreement between parties that contains a grievance procedure intended by the parties to be an exclusive remedy.

¶ 22 There is further support for this conclusion in *City of Yukon v. Int'l Ass'n of Firefighters, Local 2055*, 1990 OK 48, ¶ 8, 792 P.2d 1176, 1179, in which the Oklahoma Supreme Court recognized the *Voss* Court's adoption of the U.S. Supreme Court's opinions in the Steelworkers Trilogy cases.[5] "Once it is established that there is a collective bargaining agreement with an arbitration clause broad enough to include the dispute the role of this Court is strictly limited to determining whether the arbitrator exceeded his authority under the collective bargaining agreement." *Id.* The distinguishing fact in the instant case is that the grievance was not submitted to arbitration by the Union. However, the Union's decision not to submit a dispute to arbitration does not result in an employee gaining the right to go outside the grievance procedure provided in the CBA to obtain redress, absent additional circumstances.[6]

4. The collective bargaining agreement in *Voss* provided: "Any controversy between the Employer and the Union or any employee concerning the interpretation, enforcement or application of any provision of this Agreement, concerning any terms or conditions of employment contained in this Agreement, shall be adjusted in the following manner." 1980 OK 148, n. 1, 618 P.2d 925.

5. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347,

4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

6. An employee who contends that his/her rights pursuant to a collective bargaining agreement have been compromised may have available alternative remedies, although not yet recognized in Oklahoma. *Wilcoxson v. Tackett*, 2002 OK

¶ 23 "Generally, when a collective bargaining agreement establishes a mandatory, binding grievance procedure and gives the Union the exclusive right to pursue claims on behalf of aggrieved employees, the results obtained by the union are normally conclusive of the employee's rights under the agreement." *Elstner v. Southwestern Bell Tel. Co.*, 659 F.Supp. 1328, 1337 (S.D.Tex.1987) (citing *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). "The policy behind this doctrine is that when a dispute arises within the scope of the collective bargaining agreement, the parties are relegated to the remedies which they provided in their agreement." *Id.* (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965)). I find nothing in our jurisprudence to suggest that Oklahoma law would require a different result in this case. In *Voss*, the Oklahoma Supreme Court found that a collective bargaining agreement limits employees "to the rights and remedies specified therein." 1980 OK 148, ¶ 8, 618 P.2d at 928. An employee who selects the union as his bargaining representative empowers the Union to act as agent on the employee's behalf when entering into negotiations with employer. *See Humphrey v. Moore*, 375 U.S. 335, 342, 84 S.Ct. 363, 368, 11 L.Ed.2d 370 (1964). "Unless some improper discrimination against the individual is inherent in the system or is likely to be brought to bear against him in the particular case by the employer or the union through control of the procedure, the grievance procedure delineat-

ed in a collective bargaining agreement should be regarded as the exclusive method of adjusting grievances." *Voss*, 1980 OK 148, ¶ 9, 618 P.2d at 929. "A contrary rule which would permit an individual employee to completely sidestep available grievance procedures" would subvert the parties' interests in entering into a collective bargaining agreement, and "would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances," and "would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653, 85 S.Ct. 614, 616–17, 13 L.Ed.2d 580 (1965). *See generally, United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 580–81, 80 S.Ct. 1347, 1351–52, 4 L.Ed.2d 1409 (1960).

¶ 24 I am persuaded that this authority is in accordance with the law in Oklahoma, and that a proper construction of the language in the CBA in this case renders the district court without jurisdiction to hear Plaintiff's claim, absent extenuating circumstances which Plaintiff did not allege.[7] *See infra* note 3. Based on the foregoing reasons, I respectfully dissent.

---

CIV APP 24, ¶ 13, 41 P.3d 1024, 1028. "Such alternative remedies include an action against the employer for breach of contract, if the employee can demonstrate that the union acted unfairly, or based on a third-party beneficiary theory of recovery, if the grievance is not resolved by first resorting to the arbitration procedure set forth in the collective bargaining agreement," or "an action against the bargaining representative for breach of the duty of fair representation." *Id.*

7. The majority's reliance on *Shaffer v. Jeffery*, 1996 OK 47, 915 P.2d 910, and *City of Muskogee*

*v. Martin*, 1990 OK 70, 796 P.2d 337, for the contention that the district court had jurisdiction to hear Plaintiff's claim, is also misplaced. Both cases supported the proposition that the district court has jurisdiction *only* for the limited purpose of determining whether a dispute is arbitrable. *See Shaffer*, 1996 OK 47, ¶ 7, 915 P.2d at 913; *City of Muskogee*, 1990 OK 70, ¶¶ 17, 22, 796 P.2d at 343–44.