**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2013-20

IN THE MATTER OF THE
ARBITRATION BETWEEN
PBA LOCAL NO. 122
(SHERIFF'S OFFICER
MICHAEL ROUSE)
AND COUNTY OF
GLOUCESTER.

_____

Argued March 14, 2022 – Decided March 28, 2022

Before Judges Sabatino and Rothstadt.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-1420-20.

Timothy J. Prol argued the cause for appellant Sheriff's Officer Michael Rouse (Alterman & Associates, LLC, attorneys; Stuart J. Alterman and Timothy J. Prol, on the briefs).

Michael J. DiPiero argued the cause for respondent County of Gloucester (Brown & Connery, LLP, attorneys; Michael J. DiPiero, on the brief).

PER CURIAM

Appellant Michael Rouse is a county sheriff's officer who received a five-day suspension for a minor disciplinary violation at work. Represented by counsel, he attempted to challenge the discipline. The dispute was referred to an arbitrator, who rejected appellant's claim in a twenty-four-page written decision. Appellant then filed a complaint in the Law Division seeking to set aside the arbitrator's ruling. The Law Division judge upheld the arbitrator's decision, and this appeal ensued.

We affirm, as we agree with the trial court that appellant has failed to satisfy the narrow grounds under N.J.S.A. 2A:24-8 for vacating an arbitrator's determination. We also reject appellant's other theories for reversal.

I.

The parties are familiar with the chronology of this matter, and we need not detail that background comprehensively. The following discussion will suffice for the purposes of this opinion.

In January 2019, appellant was served with a notice of minor disciplinary action by the New Jersey Department of Civil Service for conduct stemming from an incident that occurred on April 24, 2018. As of the time of the incident, there was a collective bargaining agreement ("CBA")[1] in force between

---

[1] Various documents in the record also describe the agreement as a "CNA."

appellant's labor union and his public employer, the County of Gloucester. The CBA expired on December 31, 2018, but it continued to be in effect thereafter pending the ratification of a successor agreement.

As prescribed by the CBA, appellant exhausted three "levels" of the grievance procedure with progressively higher-ranking Sheriff's Department officials before requesting arbitration. Under "Level Four" of the CBA's procedure, appellant needed his union (also described as his "majority representative") to document its support of his arbitration request in order to obtain a hearing before an arbitrator appointed by the Public Employment Relations Commission ("PERC").

The purpose of this contractual requirement for union support of an employee's Level Four arbitration request under the CBA was explained in depth in the arbitrator's decision as follows:

> [G]iven the language chosen by the drafters concerning Article III.C.1., Level Four and D.1. [of the CBA], I find that the objectives sought to be achieved by the parties who negotiated the language may be inferred, and they are, the efficient management of limited financial resources with due regard for the duty of fair representation. In contrast to the financial interests of the majority representative at Level One through Level Three of the Grievance procedure, such financial interests are far greater at the arbitration stage due to the much higher costs incurred, e.g., attorney fees, arbitrator fees, court reporters, etc. If no contractual

check were in place on the right to arbitrate, all it would take is one litigious unit member to significantly deplete the union treasury by filing frivolous or non-meritorious arbitration demands. In turn, this would have a detrimental impact on the resources available to engage in collective negotiations, to support other grievances deemed important to the bargaining unit as a whole, to support other individual grievances deemed meritorious and would inevitably strain the labor/management relationship as well. Thus, I find that the logical objectives sought to be achieved by the parties who negotiated Article III.C.1. and D.1. of the Agreement can be discerned from the language chosen, and the permissible inferences drawn therefrom. Thus, I find that the parties who negotiated the language of Article III.C.1. and D.1. expressed an intent, for sound reasons, to preclude individual action at the arbitration stage.

[(Emphasis added).]

The record reflects that appellant individually filed a Level Four arbitration request with PERC on June 19, 2019. However, that request was not accompanied by a document showing the support of his labor union, as required by the CBA. The County accordingly moved before PERC to dismiss the arbitration request, pointing to language in the CBA specifying that only appellant's union is permitted to submit a grievance to arbitration and only "after determining that the grievance is meritorious." The County attached a verified text message from Nick Barbetta, a PBA Local 122 delegate, confirming that

the union "will not be proceeding with arbitration in the [R]ouse discipline matter." (Emphasis added).

Appellant contends there was some confusion about whether PBA Local 122 was supposed to be serving as his majority representative after the CBA contract period expired, or whether an affiliated entity of PBA Local 122 known as the Gloucester County Sheriff and Officer Association ("GCSOA") was responsible for fulfilling that role.[2]

It was not until January 23, 2020 that PERC ultimately received from appellant's counsel a formal arbitration request form filled out by Barbetta stating that PBA Local 122 was, in fact, approving appellant's arbitration request as his majority representative. By that point, the thirty-day filing deadline for a Level Four arbitration request under Article III.D.1. of the CBA had long expired.

PERC appointed an arbitrator in March 2020, referring to that arbitrator the contested issue of whether appellant's Level Four hearing request was procedurally deficient for lack of timely union support. After considering the

---

[2] According to appellant, there was uncertainty at the time as to how a June 17, 2019 Memorandum of Agreement ("MOA") between the County and PBA Local 122 affected whether the GCSOA unit of PBA Local 122 would still be his authorized majority representative in connection with his arbitration request.

matter, the arbitrator issued the aforementioned lengthy written decision on September 30, 2020, granting the County's motion to dismiss the arbitration request on the grounds of procedural noncompliance.

Among other things, the arbitrator found that any confusion as to whether the GCSOA or the PBA was in fact appellant's majority representative was in fact largely inconsequential and did not prejudice appellant. Specifically, the arbitrator noted that neither the GCSOA nor PBA approved of appellant's June 19, 2019 arbitration request when it was submitted to PERC, as required for that request to proceed.

The arbitrator further pointed out that when appellant did finally secure the approval of a union representative, in the form of Barbetta's email to appellant's counsel, Barbetta's email signature read "State Delegate, Gloucester County PBA Local #122," excluding any reference to the GCSOA. In other words, according to the arbitrator, "it appears that even [appellant] acknowledged that PBA Local 122 was the majority representative."

Citing D'Arrigo v. N.J. State Bd. of Mediation, 119 N.J. 74 (1990), the arbitrator emphasized that "unless language in the [CBA] clearly permits an individual bargaining unit member to process his or her grievance to arbitration, then only the majority representative can take such action on behalf of an

individual bargaining unit member." (Emphasis added). Applying Articles III.C.1. and III.D.1. of the CBA, which delineate the grievance procedures under Level Four and at arbitration, the arbitrator concluded that "an individual sheriff's officer cannot legitimately file a demand for arbitration as an individual."

Noting that appellant's June 19, 2019 arbitration demand is signed by appellant's attorney alone, without any indication that the attorney also represents the union, or that the union contemporaneously approved the filing, the arbitrator determined that appellant filed the demand as a lone actor without standing to do so.

The arbitrator further concluded that appellant had not "cured the issue of standing in a timely manner." The arbitrator noted the CBA's admonition to process grievances "as rapidly as possible," absent mutual agreement to extend the timelines delineated under Article III. Bearing that directive in mind, the arbitrator ruled that appellant's revised January 23, 2020 arbitration request, four months after the Level Three grievance had been dismissed, was untimely.

Appellant then brought the present action in the Law Division in a summary action pursuant to N.J.S.A. 2A:24-7, seeking to vacate the arbitrator's decision. Upon considering the parties' submissions and oral argument, the Law

Division judge issued a written opinion on February 19, 2021, concluding that appellant had not established any of the limited grounds under N.J.S.A. 2A:24-8 to set aside the arbitrator's ruling.

II.

On appeal, appellant contends the arbitrator exceeded his authority in deeming the Level Four hearing request to be procedurally defective, and acted contrary to public policy and principles of due process. Appellant further submits the arbitrator's ruling was preempted by N.J.S.A. 2A:24-3, an enforcement provision within the statute applicable to arbitration of collective bargaining agreements, N.J.S.A. 2A:24-1 to -11. Lastly, appellant maintains the arbitrator was arbitrary and unreasonable in declining to consider his grievance on the merits, and that the trial court erred in upholding that decision. None of these points are persuasive.

In considering this matter, we are guided by recognized limitations upon the scope of judicial review of arbitral decisions. As a general matter, reviewing courts must remain "mindful of the fact that the arbitrator's interpretation of the contract controls." Borough of East Rutherford v. East Rutherford PBA Local 275, 213 N.J. 190, 201 (2013) ("Local 275"). In addition, it is well established that, given New Jersey's "strong preference for judicial confirmation of

8

arbitration awards," <u>N.J. Turnpike Authority v. Local 196, I.F.T.P.E.</u>, 190 N.J. 283, 292 (2007) ("<u>Local 196</u>") (quoting <u>Weiss v. Carpenter, Bennett & Morrissey</u>, 143 N.J. 420, 442 (1996)), reviewing courts "may not substitute [their] judgment for that of a labor arbitrator and must uphold an arbitral decision so long as the award is '<u>reasonably debatable</u>.'" <u>Id.</u> at 301 (emphasis added).

Under the specific terms of the statute, a court may vacate or modify an arbitration award in only the following circumstances, as recited by the trial court in its decision:

> a. Where the award was procured by corruption, fraud or undue means;
>
> b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;
>
> d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.
>
> [N.J.S.A. 2A:24-8.]

Here, appellant essentially contends that the final ground for relief under N.J.S.A. 2A:24-8 pertains: subsection (d) (an arbitrator "exceeding" his powers). That narrow circumstance has not been demonstrated here.

The arbitrator's refusal to hear the merits of the case was manifestly justified by appellant's failure to have his labor union provide a timely submission to PERC, documenting that the union supported his arbitration request and had deemed the matter sufficiently meritorious to expend the union's resources. The arbitrator provided ample reasons for rejecting appellant's claim that this deficiency must be excused due to alleged confusion over the identity of his majority representative following the end of the CBA contract period. At the very least, the arbitrator's ruling of procedural deficiency was "reasonably debatable." Local 196, 190 N.J. at 301.

Likewise, the arbitrator did not exceed his powers by interpreting the CBA to require the union's support of appellant's request for arbitration. The plain terms of the CBA require such union support and a determination that this minor discipline case is worthy of the expenditure of the union's resources.[3]

---

[3] We need not address or resolve here whether the union's failure to provide appellant with timely support of his arbitration request amounts to a breach of the union's duty of fair representation.

We reject appellant's suggestion that the arbitrator's ruling was offensive to public policy or norms of due process. As we have already quoted above, the arbitrator provided a detailed and thoughtful explanation of policy-based reasons for why the CBA was designed to have the union screen out cases in which it would be unwise for it to expend its limited resources. There was no deprivation of due process. Indeed, appellant himself failed to appear for his initial departmental hearing and fully take advantage of all the steps available to him for redress.

Further, we reject appellant's effort to construe N.J.S.A. 2A:24-3 as a basis to preempt the arbitrator's authority and to confer upon him an alleged right to a jury trial. That statutory provision, consisting of two sentences, reads as follows:

> Where a party is aggrieved by the failure, neglect or refusal of another to perform under a written agreement providing for arbitration, the Superior Court may in a summary action direct that the arbitration proceed in the manner provided for in the agreement. The party alleged to be in default may demand a jury trial as to the issue that there has been no agreement in writing for an arbitration or that there has been no failure to comply therewith.
>
> [N.J.S.A. 2A:24-3 (emphasis added).]

Under the first sentence of N.J.S.A. 2A:24-3, appellant is plainly the "party . . . aggrieved by the failure . . . or refusal of another [party]," i.e., the County, to arbitrate his grievance. That is exactly why appellant filed his verified complaint and summary action in the Law Division: to have a judge compel the recalcitrant County (which had moved to dismiss the matter) to arbitrate the merits of his case. Notably, the statute does not require the court to compel such forced participation, but instead uses the permissive term "may." See Aponte-Correa v. Allstate Ins. Co., 162 N.J. 318, 325 (2000) ("Under the 'plain meaning' rule of statutory construction, the word 'may' ordinarily is permissive and the word 'shall' generally is mandatory."); see also State v. C.W., 449 N.J. Super. 231, 250 (App. Div. 2017) (same).

The second sentence of N.J.S.A. 2A:24-3 provides the "party alleged to be in default" of an alleged duty to arbitrate, i.e., the County, with the right to assert justifications for not taking part in a demanded arbitration. Such justifications may include the lack of a written agreement requiring that recalcitrant party to arbitrate, or an assertion that the party has not failed to comply with its obligations under an agreement. The right to a jury trial to resolve the issue of justification, if any, belongs under the statute to the party

accused of wrongfully refusing to arbitrate, not the party that wants to compel arbitration. Hence, appellant's preemption argument is unavailing.

Lastly, we discern no basis to conclude the arbitrator's decision was arbitrary, unreasonable, or capricious. Like the trial court, we are satisfied that the decision was, at the very least, within the zone of reasonably debatable analyses.

All other arguments raised before us lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13                                                            A-2013-20